IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

RRK, INC., d/b/a SHOWBOAT MARINA,
a West Virginia corporation,

                Plaintiff,

v.                                    CIVIL  ACTION  NO.  3:09-1322

NEW HAMPSHIRE INSURANCE COMPANY,
a New Hampshire corporation,
NSM INSURANCE GROUP, INC., a Pennsylvania
corporation, and INSURANCE SYSTEMS, INC.,
a West Virginia corporation,

                Defendants.

MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion to Remand by Plaintiff RRK, Inc., d/b/a Showboat Marina, a West Virginia corporation [Doc. No. 4] and its Motion and Supplemental Motion for an Expedited Hearing on the Remand Motion [Doc. Nos. 17 and 20].  Also pending is Plaintiff's Motion for Leave to File an Amended Complaint [Doc. No. 19].  For the following reasons, the Court **GRANTS** Plaintiff's Motion to Remand, **DENIES** Plaintiff's request for attorneys' fees related to the remand motion, **DENIES AS MOOT** Plaintiff's Motions for an Expedited Hearing, and **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Leave to File an Amended Complaint.

I.
FACTS

Plaintiff is the owner and operator of a marina known as the Showboat Marina located on the Ohio River in Huntington, West Virginia.  The marina consisted of 2 docks and a

barge upon which Plaintiff operated a restaurant, a boat store, and three apartments.  According to Plaintiff, the  barge had been permanently moored to the riverbank for approximately thirty years to land that was leased from a third party.

On February 23, 2009, the barge sank, and Plaintiff states that, within a week of the loss, its lawyers began making verbal requests for payments from its insurer Defendant New Hampshire Insurance Company (hereinafter New Hampshire).  Plaintiff asserts that it specifically asked for property damage coverage and liability coverage under a Commercial General Liability (CGL) policy.  After not receiving a favorable response from New Hampshire, Plaintiff filed this civil action on April 14, 2009, in the Circuit Court of Cabell County, West Virginia.

In addition to suing New Hampshire, Plaintiff also alleges claims against NSM Insurance Group, Inc. (NSM) and Insurance Systems, Inc. (ISI).  Plaintiff asserts that NSM acted as an Insurance Policy Producer.  Plaintiff states that it contracted with NSM to act as the Producer of Plaintiff's insurance policy.  Plaintiff also contracted with ISI to act as the Agent for Plaintiff's insurance policy.  In the Complaint, Plaintiff makes the following seven claims against Defendants.

1. A declaratory judgment action against New Hampshire for a declaration of rights under the Yacht Dealers/Marina Operators insurance policy (DMO) policy under West Virginia Code § 55-13-1 *et seq.*

2. A breach of contract claim against New Hampshire.

3. A first-party common law bad faith claim against New Hampshire.

    4.        A first-party statutory bad faith claim against New Hampshire.

    5.        A negligence action against NSM.

    6.        A breach of contract claim against NSM.

    7.        A negligence claim against ISI.

*Complaint*, Counts 1-7.

After the Complaint was filed, the parties engaged in discovery in State court and written demands for coverage were made.  By letter dated August 7, 2009, counsel for Plaintiff wrote counsel for New Hampshire demanding coverage and stating that the sunken barge had become a legal liability insomuch as the Corps of Engineers and the Coast Guard are pressing Plaintiff to remove it.  Counsel, therefore, demanded CGL liability coverage.

On September 16, 2009, Plaintiff's counsel wrote another letter reiterating that the barge needs to be removed.  Counsel related that they had received a letter from the Coast Guard dated September 1, 2009, and a letter from the Corps of Engineers dated September 11, 2009, requiring Plaintiff to develop a salvage/removal plan.  Both letters expressed concern that the remaining structure of the barge had become extremely hazardous as periods of high water and wind could break off pieces that could jeopardize other vessels, facilities, and the waterways.  The letter from the Coast Guard forewarned of possible regulatory action to ensure salvage, and the letter from the Corps of Engineers invoked jurisdiction under Section 404 of the Clean Water Act and Section

10 of the Rivers and Harbors Act[1] upon which it may pursue litigation.  Plaintiff's counsel attached both of these letters to the letter he sent New Hampshire's counsel.

Thereafter, on November 6, 2009, Plaintiff filed a Motion for Partial Summary Judgment.[2]  Defense counsel states that he received the motion on November 9, 2009.  In the motion, Plaintiff argued for liability coverage under the CGL policy for removing the sunken Head Barge.  In footnote 3, Plaintiff also stated it had

> additional theories of entitlement for the salvage of the Head Barge, including, but not limited to, the implication of standard provisions of a "Marine Hull Policy" that should have been issued to properly cover a Head Barge in the marine insurance industry, whether termed a "Sue and Labor Clause" or otherwise provided in the American Institute Hull Clauses.   In attempting to "reform" the Piers, Wharves and Docks (PWD) policy to "list" the Barge and utilize PWD policy language, Defendant AIG/New Hampshire seeks to improperly benefit from inapplicable and other policy language, which, but for its own failure to issue the proper policy, would be unavailing.  **These additional theories of entitlement <u>are not</u> part of this Motion for Partial Summary Judgement [sic].**  Plaintiff is, in this Motion, positing entitlement only under the clear, ordinary meaning of the language of the CGL Coverage.

_____

[1]According to the letter from the Corps of Engineers, the barge "is subject to a non-compliance action" under Section 10 because it was "not being maintained in a usable condition and has the potential to impact navigation on the waterway." *Letter from Ginger Mullins, Chief Regulatory Branch, Corps of Engineers, to Plaintiff* (Sept. 11, 2009).

[2]Both parties state that the motion was filed on November 6.  However, the motion is stamped as filed by the state court circuit clerk on November 9.

*Plaintiff's Memorandum in Support of Motion for Partial Summary Judgment*, at 8 n.3 (emphasis original).  Plaintiff attached the letters from the Coast Guard and the Corps of Engineers to the motion.  According to Plaintiff, the circuit court agreed to hear the motion on an expedited basis and set a hearing on the motion for December 9, 2009.  On December 8, 2009, Defendants removed the action to this Court based upon federal question and admiralty jurisdiction.

In support of removal, Defendants contend that Plaintiff's motion and footnote 3 in that motion create new theories of liability which raise federal jurisdiction for the first time.  A summary of these new theories from the Notice of Removal include: (1) coverage for removal of the barge based upon the threatened enforcement actions under federal law; and (2) failure to issue a Marine Hull Policy to cover the Head Barge.  In its Motion to Remand, Plaintiff argues Defendants removal is untimely and the action does not raise federal question or admiralty jurisdiction.  For the following reasons, the Court agrees with Plaintiff that remand is appropriate.

## II.
## DISCUSSION

Removal statutes are strictly construed against removal, and any doubts concerning the propriety of removal must be resolved in favor of retained state court jurisdiction. *Marshall v. Manville Sales Corp.*, 6 F.3d 229, 232 (4th Cir.1993); *Castle v. Laurel Creek Co., Inc.*, 848 F. Supp. 62, 65 (S.D. W. Va.1994); *Griffin v. Holmes*, 843 F. Supp. 81, 84 (E.D. N.C.1993).  In addition, "[t]he party seeking removal bears the burden of demonstrating that removal jurisdiction is proper." *In Re Blackwater Security Consulting, LLC*, 460 F.3d 576, 583 (4th Cir. 2006) (citation omitted).  Removal is appropriate if the action is one in which a federal court would have original jurisdiction, such as one

arising under federal law. 28 U.S.C. §§ 1331[3] and 1441(b).[4]  Likewise, civil cases involving admiralty and maritime jurisdiction fall within the original jurisdiction of federal courts. *See* 28 U.S.C. § 1333(1).[5]  If a federal claim appears on the face of a well pleaded complaint, an action arises under the laws of the United States for purposes of § 1331. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).

Removal petitions usually must be filed within thirty days of the filing of Plaintiff's initial pleading. 28 U.S.C. § 1446(b).[6]  In this case, Defendants do not dispute that their removal

---

[3]Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.

[4]Section 1441(b) states:

> Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

28 U.S.C. § 1441(b).

[5]Section 1333(1) provides: "The district courts shall have original jurisdiction, exclusive of the courts of the States, of: (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

[6]Section 1446(b), states, in part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or

(continued...)

petition was filed more than thirty days after Plaintiff filed its Complaint.  However, they contend that federal questions were not raised in the Complaint but, rather, they were raised for the first time in Plaintiff's Motion for Partial Summary Judgment.  Thus, Defendants argue that removal is proper under the second paragraph of § 1446(b), which states, in pertinent part:

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b), in part.  This provision does not require a court to look at the subjective knowledge of a defendant but, rather, it permits the court to look at "the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." *Lovern v. General Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997).  Plaintiff insists removal was improper for two reasons: (1) Defendants had notice of the facts they now assert raise federal jurisdiction long before Plaintiff filed its Motion for Partial Summary Judgment and (2) those facts, in any event, do not raise federal question or admiralty jurisdiction to support removal.

---

[6](...continued)
> proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b), in part.

With respect to the timeliness of removal, Plaintiff points out that it attached the letters from the Coast Guard and the Corps of Engineers to its September 16, 2009 letter to New Hampshire requesting coverage.  Thus, to the extent Defendants argue that those letters raise federal issues under the Clean Water Act or the Rivers and Harbors Act, Plaintiff asserts that Defendants knew of those letters more than thirty days before removal, making Defendant's removal in December untimely.  Upon review, the Court agrees.

Assuming for the moment that a federal claim can be asserted on the basis of the letters from the Coast Guard and the Corps of Engineers, Plaintiff's counsel provided copies of those letters to counsel for New Hampshire in September, and he specifically referenced the content of those letters in his plea for coverage under the CGL policy.[7]  Therefore, to the extent those letters arguably raise federal issues, Defendants did not remove the action within the thirty-day window required under § 1446(b) as those letters and Plaintiff's reference to those letters in making a claim for coverage gave clear notice to New Hampshire nearly three months before Defendants removed the case.  In addition, even if Plaintiff had not provided copies of the letters to Defendants or otherwise informed them about the letters until they were attached to Plaintiff's motion, the Court finds the references to federal law in those letters do not raise federal jurisdiction in this action.  First, Plaintiff asserts that it attached those letters to its Motion for Partial Summary Judgment solely to show evidence of property damage and loss of use.  Plaintiff attests it is in no way alleging a cause of action

---

[7]In the letter, Plaintiff's counsel wrote: "Should your client wish to settle the CGL matter and move forth immediately with the barge removal, we are all ears." *Letter from L. David Duffield to Don C. Parker* (Sept. 16, 2009).

or right to recovery under federal law by virtue of those letters.  In addition, the Court finds that, although the letters threaten possible federal intervention on the basis of federal law, the mere possibility that at some point in the future the government may get involved in the salvage/removal of the barge does not bring this action within this Court's original jurisdiction.

Defendants further assert, however, that Plaintiff argues for the first time in its Motion for Partial Summary Judgment that, based upon the threatened federal enforcement actions, Defendants should have issued a "Marine Hull Policy" to cover the Head Barge under the Yacht Dealers/Marina Operators insurance policy (DMO policy).  According to Defendants, "a basic hull insurance policy covers the vessel, her machinery, and certain liabilities for collision as well as general average and salvage charges." *Response of New Hampshire Insurance Company in Opposition to Plaintiff's Motion for Remand*, at 5 (citing 2 Admiralty & Mar. Law § 19-10 (4th ed.)).  With respect to a commercial vessel, a hull policy covers physical damage and losses from certain identified perils. *Id.*  Defendants contend that this claim is different than what exists in the Complaint because it is the first time Plaintiff attempts to get coverage based upon the barge being a seagoing vessel, rather than being part of the dock.  Defendants argue that hull insurance involves a marine insurance policy which falls within the admiralty jurisdiction of this Court.

Plaintiff insists, however, that the parties have engaged in extensive discussions about hull insurance from the very start.  Plaintiff points to three letters dated February 25, March 4, and May 13, 2009, from AI Marine Adjusters, Inc. on behalf of New Hampshire in which coverage was denied on the grounds that no vessel is listed under the DMO policy.  Moreover, Plaintiff states that it asserted

in the Complaint filed on April 14, that Defendant failed to provide proper insurance.  Therefore,

Plaintiff argues Defendants had objective awareness of the claim months before it filed for removal.

Looking at the Complaint, Plaintiff asserts in the statement of facts that it had a DMO

insurance policy and, within forty-eight hours of the barge sinking, New Hampshire denied coverage

for the head barge and restaurant as not being covered under the policy. *Complaint*, at ¶¶ 9 and 12.

Plaintiff further alleges that, prior to the insurance policy being issued, e-mail correspondence between

NSM and ISI discussed coverage for the head barge.  Plaintiff states that NSM e-mailed ISI and asked

if the head barge was "added to the policy." *Id*. at ¶ 14 (internal quotation marks omitted).  In response,

ISI wrote:

> There wasn't anything to add at the time we were just
> changing value from 550,000 to 500,000 on bldgs and
> $50,000 on contents.  I have attached a diagram of the
> Marina and a few photos.  There is no way to split the
> coverage per restaurant, convenience store, repair bldg
> as it is all attached together.  It was built on a barge it
> is around 20 years old, frame construction, tin roof.
> Take a look and let me know if you need anything
> additional.

*Id*. at ¶ 15.  Ten days later the DMO policy was issued. *Id*. at ¶ 16.  Plaintiff then goes on in the

Complaint to assert several causes of action.

The first cause of action is that the barge is covered by the DMO policy. *Id*. at ¶¶ 19,

23 and 24.  Another theory, however, is that both NSM and ISI "negligently breached its duty of care

in reviewing, advising, preparing, producing and procuring sufficient types and coverages amounts of

insurance to protect the property owned by Plaintiff." *Id*. at 45 and 56.  In the Prayer for Relief,

Plaintiff also request joint and several liablity.

-10-

Given the allegations in the Complaint, this Court has little difficulty finding the four corners of the document objectively gave notice to Defendants of Plaintiff's claims that, if it is determined coverage for the barge did not exist, then NSM and ISI were negligent in failing to procure such coverage. Although the Complaint does not specifically mention a "Marine Hull Policy," it is clear Plaintiff is asserting claims that the barge was either actually covered or, in the alternative, should have been covered. Therefore, assuming those claims are sufficient to support admiralty jurisdiction, such jurisdiction existed when the Complaint was filed irrespective of the fact that Plaintiff later referred to it as a "Marine Hull Policy."

Moreover, although the claim was not made directly against New Hampshire in the Complaint, the Complaint alleges that ISI acted as New Hampshire's Agent and NSM acted as New Hampshire's Producer. *Id*. at ¶ 13. Under West Virginia Code § 33-12-22, "[a]ny person who shall solicit within this state an application for insurance shall, in any controversy between the insured or his or her beneficiary and the insurer issuing any policy upon such application, be regarded as the agent of the insurer and not the agent of the insured." W. Va. Code § 33-12-22. In light of the principles of vicarious liability and the fact that Plaintiff specifically seeks joint and several liability, the Court finds the Complaint's allegations that NSM and ISI were negligent in procuring the proper insurance, instead of making the claim against New Hampshire directly, is of little consequence. Quite simply, the claim existed at the time the Complaint was filed and, if admiralty jurisdiction existed by virtue of that claim, Defendants had thirty days from April 14 to remove the case.[8]

_____

[8]The parties dispute whether or not this issue even raises admiralty jurisdiction. As the Court finds removal untimely even if the Court assumes admiralty jurisdiction exists, the Court declines to address the merits of the parties' admiralty arguments.

-11-

### III.
### ATTORNEYS' FEES

Having determined that removal was improper, the Court must consider Plaintiff's request for attorneys' fees and costs.  Pursuant to 28 U.S.C. § 1447, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  In *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005), the United States Supreme Court explained that "the standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." 546 U.S. at 141 (citations omitted).  In this case, although the Court ultimately agrees with Plaintiff that remand is warranted, the Court does not find that Defendants "lacked an objectively reasonable basis" for removal.  Therefore, the Court **DENIES** Plaintiff's request for fees and costs.

### IV.
### CONCLUSION

Having determined that Defendants improperly removed this action, the Court **GRANTS** Plaintiff's Motion to Remand, **DENIES** within that motion Plaintiff's request for attorneys' fees and costs [Doc. No. 4], **DENIES AS MOOT** Plaintiff's Motions for an Expedited Hearing [Doc. Nos. 17 and 20], and **DENIES WITHOUT PREJUDICE** Plaintiff's Motion for Leave to File an Amended Complaint [Doc. No. 19].

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and any unrepresented parties.

ENTER:        April 9, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE